# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Robert K. Hunter,** individually and on behalf of all others similarly situated; | Case No.   8:21-cv-00744 (MAD/CFH) |
| Plaintiff, | **<u>CLASS ACTION COMPLAINT</u>** |
| v. | **DEMAND FOR JURY TRIAL** |
| **Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield;** | |
| Defendant. | |

Plaintiff Robert K. Hunter, on behalf of himself and on behalf of all others similarly situated, alleges, based on his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION AND NATURE OF THIS ACTION

1.      Plaintiff Robert K. Hunter challenges Defendant's standardized practice of excluding from coverage proton beam therapy for the treatment of prostate cancer. Proton beam therapy is a form of external beam radiotherapy designed to kill cancer cells. The tumor is targeted with a radiation beam made of ionizing particles that damage the DNA of cells, causing their death or preventing them from proliferating.

2.      The procedure uses protons to deliver a curative radiation dose to a tumor, while reducing doses to healthy tissues and organs, which results in fewer complications and side effects than traditional radiation therapy. With proton beam

therapy treatment, protons deposit their energy over a very small area called the "Bragg peak." The Bragg peak can be used to target high doses of proton beams to a tumor, while doing less damage to normal tissues in front of and behind the tumor. Proton beams enable patients to tolerate higher total doses of radiotherapy compared with traditional radiation treatment. The beam used in proton beam therapy can be adjusted and shaped to match the size and shape of the cancerous tissue to be destroyed, while not killing healthy tissue beyond a pre-determined scope and depth. The cancer cell then begins to break itself down through a process known as apoptosis or programmed cell death.

3.      At treatment, an external source of radiation generated by a particle accelerator is pointed at a particular part of the body, directing the radiation beams directly at the tumor. Rays of different energy are used depending on the tumor depth. Lower energy x-rays are used to treat skin cancer and superficial structures, whereas higher energy x-rays are used to treat deep-seated tumors (e.g., bladder, bowel, prostate, lung, or brain).

4.      Studies have shown proton beam therapy to be effective in treating many types of tumors, including tumors of the prostate, brain, head and neck, central nervous system, lung, and gastrointestinal system as well as cancers that cannot be removed completely by surgery. See ¶ 27 below.  Proton beam therapy is often the preferred option for treating solid tumors in children because protons can be controlled precisely so there is less radiation of normal tissues, helping prevent serious complications and lessening the chance of secondary tumors.

2

5.      Proton beam therapy's treatment advantages include:

- It targets tumors and cancer cells with precision and minimal exit dose;
- It reduces overall toxicity;
- It reduces the probability and/or severity of short- and long-term side effects on surrounding healthy tissues and organs (e.g., reduces likelihood of secondary tumors caused by treatment);
- It precisely delivers an optimal radiation dose to the tumor;
- It can be used to treat recurrent tumors, even in patients who have already received radiation;
- It improves quality of life during and after treatment; and
- It increases the long-term, progression-free survival rates for certain types of tumors.

6.      The invention of proton beam therapy is credited to physicist Robert Wilson, who first described it theoretically in 1946. By the 1950s, some health care facilities were using proton beam therapy to treat certain types of cancers. The Food and Drug Administration approved proton beam therapy in 1988 for the treatment of cancer. The National Association for Proton Therapy, Alliance for Proton Therapy Access and other nationally recognized medical organizations, and numerous meticulous peer- reviewed studies have validated the safety and effectiveness of proton beam therapy. Many respected cancer facilities and providers, including Baptist Hospital's Miami Cancer Institute, MD Anderson Cancer Center, Loma Linda University, University of Florida, University of Maryland, Northwestern University, Mayo Clinic, Emory University, Case Western Reserve University, Washington University in St. Louis, University of Washington, New York Proton Center, and the Texas Center for Proton Therapy recommend and use proton beam therapy on a regular basis.

7.      Plaintiff Robert K. Hunter has prostate cancer. His doctor recommended that he be treated with proton beam therapy.

8.      Hunter's health insurance is underwritten and administered by Defendant. The relevant certificate of coverage describing the various rights and obligations of Hunter and Defendant is attached at **Exhibit A.** The health plan itself is sponsored by Hunter's former employer, meaning that the federal law ERISA regulates the health plan.  29 U.S.C. § 1003(a)(1).

9.      Defendant has denied Hunter's coverage request because – it claims – proton beam therapy is not medically necessary for the treatment of prostate cancer.

10.     Defendant's position is contrary to the science, relies on outdated source material, conflicts with Defendant's coverage position when Medicare pays for proton beam therapy, and is an abuse of its discretion.

11.     With this action, Plaintiff and class members seek to 1) conform Defendant's calibration of medical necessity with the state-of-the-art view of proton beam therapy treatment and conclude that it is appropriate to treat prostate cancer 2) require Defendant to cover and/or reimburse Plaintiff and class members for their proton beam therapy treatment 3) require Defendant to cover proton beam therapy for treatment of prostate cancer in the future.

JURISDICTION AND VENUE

12.     This Court has original jurisdiction under 28 U.S.C. § 1331, as this case arises under federal law.

13.     Venue is appropriate in this judicial district because the Plaintiff resides in this district, the Defendant conducts considerable business within this district, and many of the breaches described here occurred within this district.

14.     In conformity with 29 U.S.C. §1132(h), Plaintiff will serve the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

### PARTIES

15.     Plaintiff Robert K. Hunter, at all material times, was an individual citizen and resident of Lake Placid, New York.

16.     Defendant Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield, operates from 165 Court Street, Rochester, New York. Defendant provides health insurance in the following New York counties: Monroe, Wayne, Livingston, Seneca, Yates, Ontario, Steuben, Schuyler, Chemung, Tioga, Tompkins, Cortland, Broome, Cayuga, Onondaga, Oswego, Chenango, Madison, Delaware, Otsego, Herkimer, Montgomery, Fulton, Oneida, Lewis, Hamilton, Essex, Clinton, Franklin, St. Lawrence and Jefferson.

17.     Defendant is responsible for drafting and applying the internal level of care and coverage determinations described in this Complaint. Defendant also adjudicates all prostate cancer coverage requests, treatment services, mental healthcare and substance abuse claims for plaintiff's ERISA-regulated health insurance plan. In this Complaint, "Excellus" or "Defendant" refers to the named defendant and all

parent, subsidiary, successor, predecessor and related entities to which these allegations pertain.

18.     In light of its central role in the claim adjudication process, Excellus is an ERISA fiduciary as defined by 29 U.S.C. § 1002(21). As such, it is legally required to discharge its duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan.  29 U.S.C. §  1104(a).  It must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers, so long as such terms are consistent with ERISA. *Id.* As a fiduciary, Defendant owes a duty of loyalty and a duty of care to plan participants and beneficiaries.

FACTS

**Insurance coverage promises**

19.     Defendant promises to pay for "Covered Services" when that service is 1) Medically Necessary 2) Provided by a Participating Provider 3) Listed as a Covered Service 4) Not in excess of any benefit limitations 5) While Defendants' coverage is in force. (**Exhibit A, ECF p. 13).** Services are considered Medically Necessary when "[t]hey are clinically appropriate in terms of type, frequency, extent, site, and duration, and considered effective for Your illness, injury, or disease; [t]hey are required for the direct care and treatment or management of that condition; [y]our condition would be adversely affected if the services were not provided; [t]hey are provided in accordance with generally-accepted standards of medical practice; [t]hey are not primarily for the

6

convenience of You, Your family, or Your Provider; [t]hey are not more costly than an alternative service or sequence of services, that is at least as likely to produce equivalent therapeutic or diagnostic results[…]  When setting or place of service is part of the review, services that can be safely provided to You in a lower cost setting will not be Medically Necessary if they are performed in a higher cost setting. For example, We will not provide coverage for an inpatient admission for surgery if the surgery could have been performed on an outpatient basis or an infusion or injection of a specialty drug provided in the outpatient department of a Hospital if the drug could be provided in a Physician's office or the home setting."

20.     Excellus specifically covers radiation therapy (**Exhibit A, ECF p. 51**).

21.     Absent a finding of medical necessity, Hunter's coverage request facially satisfies the definition of Covered Services.

22.     Hunter's treating physician, Dr. Neha Vapiwala of the University of Pennsylvania Hospital prescribed "image-guided hypofractionated proton beam therapy" treatment. This treatment was recommended in light of Hunter's precancerous colon polyps, his history of atypical moles with a family history of melanoma, along with his emotional state.

23.     Excellus first denied Hunter's request for coverage by letter dated Feb. 3, 2021 (**Exhibit B**). This letter, signed by Matthew Kosky, states that there is no research showing that Hunter's type of cancer responds better to the requested type of treatment than the type of treatment that Excellus can approve (intensity modulated radiation therapy).

7

24.     Excellus affirmed this coverage denial by letter dated Feb. 9, 2021 **(Exhibit**

**C)**. This second denial was for the same reason: "[T]here is no current research showing

that your type of cancer responds better to the requested type of treatment than the type

of treatment [intensity-modulated radiation therapy] we can approve."

25.     Hunter completed a final appeal (**Exhibit D),** which again was rejected by

letter dated April 10, 2021 (**Exhibit E**). The denial was because "charged particle

irradiation with proton ion beams is not considered medically necessary for the

treatment of prostate cancer [and] there is no current research showing that your type of

cancer responds better to the requested type of treatment than the type of treatment

[intensity-modulated radiation therapy] we can approve." This denial represented

Excellus's final adverse determination.

26.     In his appeals, Hunter responded to the contention that intensity-

modulated radiation therapy was equivalent with the following:

> It is incontrovertible that exposure to radiation can damage healthy tissue
> leading to long term detrimental effects including, but not limited to,
> secondary cancers. The secondary cancers in the radiation treatment
> of prostate cancer include an increased risk of colon, rectal and bladder
> cancers. As most colorectal cancers develop from polyps on the inner lining of
> the colon or rectum and prostate cancer patients are at increased risk of
> precancerous polyps, the increase risk of rectal cancer following radiation is
> of particular concern. Other possible long term detrimental effects that
> diminish quality of life include erectile dysfunction, urinary incontinence,
> and gastrointestinal toxicities such as chronic diarrhea and fecal incontinence.

> It is also widely accepted and supported by clinical studies that PBT is a
> significantly more effective method than IMRT in applying radiation to a
> specific target and minimizing the radiation exposure of healthy tissue.

Vargas and colleagues compared PBT with IMRT and reported that "PBT reduced the mean radiation dose to the rectum and bladder by 59% and 35%, respectively".

This reduction in radiation exposure of healthy tissue using PBT has been shown to reduce second cancers. Xiang and colleagues found that "PBT had an overall lower risk of second cancer versus IMRT", as did Sethi and colleagues who's data analysis suggested that PBT "significantly lowers the risk of RT-induced malignancy.

The use of PBT has also been shown to reduce radiation related toxicities. Bryant and colleagues reported that "PBT provided excellent biochemical control rates,...preserves patient-reported quality of life, and is associated with a low incidence of high-grade urologic toxicity" ; and a study in which Dr. Vapiwala was one of the authors, concluded that hypofractionated PBT is "associated with low rates of toxicity...".

In evaluating my medical condition, my history of precancerous colon polyps, my history of atypical moles with a family history of melanoma, and my emotional status, Dr. Vapiwala concluded that - beyond curing the cancer itself - in order to minimize the risk of secondary cancer and for her patient to regain maximum function, the higher level of precision with PBT is a medical necessity. She states, "In light of Mr. Hunter's young age, otherwise excellent health, and specific concerns of potential late tissue effects and secondary malignancy rates attributable to scatter radiation from photon- based treatment, proton beam therapy would be the non-invasive radiation option of choice for his case." "In addition, Mr. Hunter has a history of colon polyps and prior hernia surgery, which place him at greater risk for adverse implications of low- and moderate-range radiation doses to the bowel." (See Letter of Medical Necessity, Attachment 1).

**(Exhibit  D, ECF p. 2-3)**

**27.**     The studies cited by Hunter in his appeal are: (1) NIH National Cancer

Institute: www.cancer.gov/about-cancer/treatment/types/radiation-therapy/side-

effects; (2) Sethi RV, Shih HA, Yeap BY, Mouw KW, Petersen R, Kim DY, Munzenrider

JE, Grabowski E, Rodriguez-Galindo C, Yock TI, Tarbell NJ, Marcus KJ, Mukai S,

MacDonald SM. Second nonocular tumors among survivors of retinoblastoma treated

with contemporary photon and proton radiotherapy. Cancer. 2014;120:126–33;

(3)www.cancer.org; (4) University of Buffalo. "Prostate cancer patients are at increased

risk of cancerous colon polyps." Science Daily, 19 October 2010.

www.sciencedaily.com/releases/2010/10/101019121756.html; (5) Cancer Treatment

Reviews, May 14, 2018 https://doi.org/10.1016/j.curve.2018.05.008;

(6) Wisenbaugh ES, Andrews PE, Ferrigni RG, Schild SE, Keole SR, Wong WW, Vora

SA. Proton beam therapy for localized prostate cancer 101: basics, controversies, and

facts. Rev Urol. 2014;16(2):67-75; (7) Loeffler JS, Durante M. Charged particle therapy--

optimization, challenges and future directions. Nat Rev Clin Oncol. 2013 Jul;10(7):411-

24. doi: 10.1038/nrclinonc.2013.79. Epub 2013 May 21; (8) Kandula S, Zhu X, Garden AS,

Gillin M, Rosenthal DI, Ang KK, Mohan R, Amin MV, Garcia JA, Wu R, Sahoo N, Frank

SJ. Spot-scanning beam proton therapy vs intensity-modulated radiation therapy for

ipsilateral head and neck malignancies: a treatment planning comparison. Med Dosim.

2013;38:390–4; (9) Vargas C, Fryer A, Mahajan C, et al. Dose-volume comparison of

proton therapy and intensity-modulated radiotherapy for prostate cancer. Int J Radiat

Oncol Biol Phys. 2008;70:744–751; (10) Xiang, M, Chang, DT, Pollom, EL. Second cancer

risk after primary cancer treatment with three-dimensional conformal, intensity-

modulated, or proton beam radiation therapy. Cancer. 2020: 126: 3560- 3568. https://

doi.org/10.1002/cncr.32938; (11) Bryant C, Smith TL, Henderson RH, Hoppe BS,

Mendenhall WM, Nichols RC, Morris CG, Williams CR, Su Z, Li Z, Lee D, Mendenhall

NP. Five-Year Biochemical Results, Toxicity, and Patient-Reported Quality of Life After

Delivery of Dose-Escalated Image Guided Proton Therapy for Prostate Cancer. Int J

10

Radiat Oncol Biol Phys. 2016 May 1;95(1):422-434. doi: 10.1016/j.ijrobp.2016.02.038. Epub 2016 Feb 16. PMID: 27084658. **(Exhibit D, ECF p. 7)**

28.　　Excellus's denial of benefits, despite the clear superiority of proton beam therapy over any alternative therapy for plaintiff, breached its contractual and fiduciary duties.

29.　　Excellus's coverage position is even harder to defend when contrasted with its coverage position when Medicare pays for the services. Excellus provides Medicare coverage under the trade names BlueBasic and BluePlus. Both plans cover proton beam therapy for treatment of prostate cancer. Thus, if Hunter was three years older, his proton beam therapy treatment would have been medically necessary.

### CLASS ALLEGATIONS

30.　　Hunter brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(1)-(3) of the Federal Rules of Civil Procedure:

> *All persons covered under ERISA-governed health care plans, administered or insured by Excellus whose requests for coverage for proton beam therapy to treat prostate cancer were denied in based on its determination that proton beam therapy is not considered medically necessary to treat prostate cancer (the "Class").*

31.　　Excluded from the Class are: the officers, directors, or employees of the Defendant; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff.

32.　　The Class period began six years before the commencement of this action and concludes on the date the class is certified.

33.     The exact number of members of the Class is currently unknown and unavailable to Plaintiff at this time, but it is estimated that the Class consists of several hundreds of Class members. Accordingly, Class membership is so numerous that joinder of individual members of the Class is impracticable.

34.     The Class is ascertainable because its members can be readily identified using Defendant's claims data. Membership of the Class is defined based on objective criteria.

35.     **Predominance:** Common questions of law and fact exist that predominate over any questions affecting only individual Class members. These common legal and factual questions, which do not vary from Class member to Class member and which may be determined without reference to any Class member's individual circumstances, include but are not limited to:

a.    Whether Defendant acted as an ERISA fiduciary when it made coverage denial determinations concerning treatment for prostate cancer;

b.    Whether Defendant applied a policy of total denial of coverage for proton beam therapy for prostate cancer when it determined that such services was not medically necessary;

c.    Whether Class members are entitled to wrongly denied benefits and/or equitable relief, including but not limited to injunctive relief and equitable restitution; and

d.    Whether Defendant is liable for attorneys' fees and costs.

36.     Defendant engaged in a common course of conduct by Defendant that gives rise to all claims. The claims are typical of the claims of all Class members because Defendant injured all Class members through a uniform course of conduct and employing the same coverage practices for each and every Class member. The same legal theories apply to each Class member, and Plaintiff seeks the same forms of relief for all Class Members. There are no defenses available to Defendant that are unique to Plaintiff.

37.     Hunter can fairly and adequately protect and represent the interests of each member of both classes because he has no conflict of interest in this cause of action with the class and its membership.  Hunter's interests are perfectly aligned with the members of the class and Hunter and the members of the class have a mutual interest in seeking benefits and other relief against Defendant. Hunter is represented by competent and experienced class action counsel.

38.     **Superiority –** A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual litigation of all Class member claims is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts, in which individual litigation of hundreds of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, the prospect of a race for the courthouse, and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all Class

members' claims relating to Defendant's unlawful conduct. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

39.     In the alternative, this action may be properly maintained under Rules 23(b)(1) and (2) of the Federal Rules of Civil Procedures as a class action because:

a.     the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

b.     the prosecution of separate by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impeded their ability to protect their interests; or

c.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

### COUNT I
### CLAIM FOR PLAN BENEFITS
### UNDER 29 U.S.C. § 1132(A)(1)(B).

40.     Plaintiff incorporates paragraphs 1-38 of this Complaint and restates them.

41.     Plaintiff brings this claim on his own behalf and on behalf of the Class under 29 U.S.C. § 1132(a)(1)(B) for wrongfully denied benefits. Plaintiff is empowered to bring a claim under this provision because he is an ERISA "participant."

42.     Under the terms of the Plans and applicable law, Defendant was required to pay for all medically necessary treatment for Plaintiff and the Class.

43.     While covered under the Excellus Plans, Plaintiff and the Class were entitled to benefits under the terms and conditions of the Plans, including coverage for proton beam therapy when Plaintiff and the Class suffered prostate cancer for which each of their treating providers determined proton beam therapy was medically necessary.

44.     Defendant improperly denied proton beam therapy for the Plaintiff and the Class within the applicable limitations period.

45.     Plaintiff has exhausted all available administrative remedies and appeals.

46.     To remedy Defendant's wrongful conduct in denying Plaintiff and the Class the proton beam therapy recommended by their providers, Plaintiff seeks an order clarifying that application of that policy to deny them medically necessary proton beam therapy violated the plain terms of the Plans, as regulated by ERISA and implementing regulations incorporated into the Plans and enjoining Defendant from applying the policy to claims for proton beam therapy claims in the future.

COUNT II
BREACH OF FIDUCIARY DUTY
UNDER 29 U.S.C. § 1132(A)(3)

47.     Plaintiff incorporates paragraphs 1-27 of this Complaint and restates them.

48.     Plaintiff brings this claim on his own behalf and on behalf of the Class under 29 U.S.C. § 1132(a)(3). Plaintiff is empowered to bring this claim because he is an ERISA Plan Participant.

49.     Defendant acts as an ERISA fiduciary with respect to the administration and claims decisions of the group health benefit plan it issues to employers, within the meaning of 29 U.S.C. § 1109(a) and 1002(21)(A). With respect to these plans, Defendant exercises discretionary authority or control respecting management of the plans, and exercises authority or control respecting management or disposition of the plans' assets. Defendant has the authority, and actually exercises the authority, to fund plans or administer self-funded plans (like the Plans), make decisions on claims for benefits and appeals thereof, and to write checks for benefits.

50.     As an ERISA fiduciary, Defendant must act with the utmost prudence and loyalty in communicating to plan participants and beneficiaries and in administering their claims under the plan, and must otherwise comply with the requirements of ERISA, and with terms and conditions of its ERISA plans themselves, in making benefit determinations and processing claims on behalf of plan participants and beneficiaries.

51.     As the entity responsible for making medical benefit determinations under the plans and responsible for developing internal practices and policies to facilitate such determinations, Defendant is an ERISA fiduciary.

52.     As an ERISA fiduciary, and pursuant to 29 U.S.C. § 1104(a), Defendant is required to discharge its duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose of providing benefits to participants and their beneficiaries" and paying "reasonable expenses of administering the plan." Defendant must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers. Defendant must conform its conduct to a fiduciary duty of loyalty and may not make misrepresentations to its insureds.

53.     Defendant violated these duties by adopting, implementing, and applying a policy to deny coverage for proton beam therapy based on its finding that such treatment was not superior to other types of covered services, when such a finding was contrary to generally accepted practices and Defendant's own coverage protocol with respect to Medicare plans.

54.     In doing so, Defendant did not act "solely in the interests of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits." Defendant did not utilize the "care, skill, prudence, and diligence" of a "prudent man" acting in a similar capacity.

55.     Instead, Defendant elevated its own interests and those of its corporate affiliates above the interests of plan participants and beneficiaries. By applying an unreliable and outdated medical policy to proton beam therapy claims, Defendant artificially decreased the number and value of covered claims thereby benefiting its corporate affiliates at the expense of insureds.

17

56.     Plaintiff and the Class have been harmed by Defendant's breaches of fiduciary duty because their claims have been subjected excluded improperly when proton beam therapy is actually a Covered Health Care Service within the definition of the plans.

57.     In acting and failing to act as described above, Defendant has breached its fiduciary duties.

58.     Plaintiff has exhausted all available administrative remedies and appeals.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for relief and judgment against Defendant as follows:

A.     Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as a representative of the Class, and designating Plaintiff's counsel as Class Counsel;

B.     As to the first claim for relief, an Order awarding Plaintiff and the Class the amounts representing the unpaid proton beam therapy benefits; or, in the alternative, entry of an injunction ordering Defendant to retract its categorical denials of proton beam therapy requests for coverage; reprocessand/or re-evaluate all requests for proton beam therapy coverage applying the correct medical necessity calibration, and disgorge all profits Defendant realized due to these improperly denied claims;

C.      As to the second claim for relief, an Order requiring the reprocessing

and/or re-evaluation of all Class requests for proton beam therapy coverage

applying the correct medical necessity calibration; and an order disgorging all

profits realized due to these improperly denied claims;

D.      Awarding Plaintiff and the Class the costs of prosecuting this action,

including expert witness fees;

E.      Awarding Plaintiff and the Class reasonable attorneys' fees and costs as

allowable by law;

F.      Awarding pre-judgment and post-judgment interest; and

G.      Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all counts so triable.


Dated: June 30, 2021                        Respectfully submitted,


                                            */s/ Randi A. Kassan*
                                            Randi A. Kassan (N.D.N.Y. Bar No. 517821)
                                            MILBERG COLEMAN BRYSON PHILLIPS
                                            GROSSMAN LLC
                                            100 Garden City Plaza, Suite 500
                                            Garden City, NY  11530
                                            Telephone:  (516) 741-5600
                                            rkassan@milberg.com

Arthur Stock
Ryan McMillan
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN LLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone : (865) 247-0080
astock@milberg.com
rmcmillan@milberg.com

Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Telephone: (954) 616-8995
jordan@jml-lawfirm.com

***Attorneys for Plaintiff***