UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Robert K. Hunter,** individually and on behalf of all others similarly situated; <br><br> Plaintiff, <br><br> v. <br><br> **Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield;** <br><br> Defendant. | Case No. 8:21-cv-00744-MAD-CFH <br><br> **AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Robert K. Hunter alleges, based on his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

### INTRODUCTION AND NATURE OF THIS ACTION

**1.** Plaintiff Robert K. Hunter challenges Defendant's exclusion from coverage proton beam therapy for the treatment of prostate cancer. Proton beam therapy is a form of external beam radiotherapy designed to kill cancer cells. The tumor is targeted with a radiation beam made of ionizing particles that damage the DNA of cells, causing their death or preventing them from proliferating.

**2.** The procedure uses protons to deliver a curative radiation dose to a tumor, while reducing doses to healthy tissues and organs, which results in fewer complications and side effects than traditional radiation therapy. With proton beam therapy treatment, protons deposit their energy over a very small area called the "Bragg

peak." The Bragg peak can be used to target high doses of proton beams to a tumor, while doing less damage to normal tissues in front of and behind the tumor. Proton beams enable patients to tolerate higher total doses of radiotherapy compared with traditional radiation treatment. The beam used in proton beam therapy can be adjusted and shaped to match the size and shape of the cancerous tissue to be destroyed, while not killing healthy tissue beyond a pre-determined scope and depth. The cancer cell then begins to break itself down through a process known as apoptosis or programmed cell death.

3.    At treatment, an external source of radiation generated by a particle accelerator is pointed at a particular part of the body, directing the radiation beams directly at the tumor. Rays of different energy are used depending on the tumor depth. Lower energy x-rays are used to treat skin cancer and superficial structures, whereas higher energy x-rays are used to treat deep-seated tumors (e.g., bladder, bowel, prostate, lung, or brain).

4.    Studies have shown proton beam therapy to be effective in treating many types of tumors, including tumors of the prostate, brain, head and neck, central nervous system, lung, and gastrointestinal system as well as cancers that cannot be removed completely by surgery. See ¶ 27 below.  Proton beam therapy is often the preferred option for treating solid tumors in children because protons can be controlled precisely so there is less radiation of normal tissues, helping prevent serious complications and lessening the chance of secondary tumors.

5.    Proton beam therapy's treatment advantages include:

- It targets tumors and cancer cells with precision and minimal exit dose;
- It reduces overall toxicity;
- It reduces the probability and/or severity of short- and long-term side effects on surrounding healthy tissues and organs (e.g., reduces likelihood of secondary tumors caused by treatment);
- It precisely delivers an optimal radiation dose to the tumor;
- It can be used to treat recurrent tumors, even in patients who have already received radiation;
- It improves quality of life during and after treatment; and
- It increases the long-term, progression-free survival rates for certain types of tumors.

**6.** The invention of proton beam therapy is credited to physicist Robert Wilson, who first described it theoretically in 1946. By the 1950s, some health care facilities were using proton beam therapy to treat certain types of cancers. The Food and Drug Administration approved proton beam therapy in 1988 for the treatment of cancer. The National Association for Proton Therapy, Alliance for Proton Therapy Access and other nationally recognized medical organizations, and numerous meticulous peer- reviewed studies have validated the safety and effectiveness of proton beam therapy. Many respected cancer facilities and providers, including Baptist Hospital's Miami Cancer Institute, MD Anderson Cancer Center, Loma Linda University, University of Florida, University of Maryland, Northwestern University, Mayo Clinic, Emory University, Case Western Reserve University, Washington University in St. Louis, University of Washington, New York Proton Center, and the Texas Center for Proton Therapy recommend and use proton beam therapy on a regular basis.

7. Plaintiff Robert K. Hunter has prostate cancer. His doctor recommended that he be treated with proton beam therapy.

8. Hunter's health insurance is underwritten and administered by Defendant. The relevant certificate of coverage describing the various rights and obligations of Hunter and Defendant is attached at **Exhibit A.** The health plan itself is sponsored by Hunter's former employer, meaning that the federal law ERISA regulates the health plan.  29 U.S.C. § 1003(a)(1).

9. Defendant has denied Hunter's coverage request because – it claims – proton beam therapy is not medically necessary for the treatment of prostate cancer.

10. Defendant's position is contrary to the science, relies on outdated source material, conflicts with Defendant's coverage position when Medicare pays for proton beam therapy, and is an abuse of its discretion.

11. With this action, Plaintiff seeks to 1) conform Defendant's calibration of medical necessity with the state-of-the-art view of proton beam therapy treatment and conclude that it is appropriate to treat his prostate cancer and 2) require Defendant to cover Plaintiff for hisproton beam therapy treatment.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction under 28 U.S.C. § 1331, as this case arises under federal law.

13. Venue is appropriate in this judicial district because the Plaintiff resides in this district, the Defendant conducts considerable business within this district, and many of the breaches described here occurred within this district.

14. In conformity with 29 U.S.C. §1132(h), Plaintiff served the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

**PARTIES**

15. Plaintiff Robert K. Hunter, at all material times, was an individual citizen and resident of Lake Placid, New York.

16. Defendant Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield, operates from 165 Court Street, Rochester, New York. Defendant provides health insurance in the following New York counties: Monroe, Wayne, Livingston, Seneca, Yates, Ontario, Steuben, Schuyler, Chemung, Tioga, Tompkins, Cortland, Broome, Cayuga, Onondaga, Oswego, Chenango, Madison, Delaware, Otsego, Herkimer, Montgomery, Fulton, Oneida, Lewis, Hamilton, Essex, Clinton, Franklin, St. Lawrence and Jefferson.

17. Defendant is responsible for drafting and applying the internal level of care and coverage determinations described in this Complaint. Defendant also adjudicates all prostate cancer coverage requests, treatment services, mental healthcare and substance abuse claims for plaintiff's ERISA-regulated health insurance plan. In this Complaint, "Excellus" or "Defendant" refers to the named defendant and all parent, subsidiary, successor, predecessor and related entities to which these allegations pertain.

18. In light of its central role in the claim adjudication process, Excellus is an ERISA fiduciary as defined by 29 U.S.C. § 1002(21). As such, it is legally required to

discharge its duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan. 29 U.S.C. § 1104(a). It must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers, so long as such terms are consistent with ERISA. *Id.* As a fiduciary, Defendant owes a duty of loyalty and a duty of care to plaintiff.

## FACTS

### Insurance coverage promises

**19.**     Defendant promises to pay for "Covered Services" when that service is 1) Medically Necessary 2) Provided by a Participating Provider 3) Listed as a Covered Service 4) Not in excess of any benefit limitations 5) While Defendants' coverage is in force. (**Exhibit A, ECF p. 13).** Services are considered Medically Necessary when "[t]hey are clinically appropriate in terms of type, frequency, extent, site, and duration, and considered effective for Your illness, injury, or disease; [t]hey are required for the direct care and treatment or management of that condition; [y]our condition would be adversely affected if the services were not provided; [t]hey are provided in accordance with generally-accepted standards of medical practice; [t]hey are not primarily for the convenience of You, Your family, or Your Provider; [t]hey are not more costly than an alternative service or sequence of services, that is at least as likely to produce equivalent therapeutic or diagnostic results[…] When setting or place of service is part of the review, services that can be safely provided to You in a lower cost setting will not be Medically Necessary if they are performed in a higher cost setting. For example, We

6

will not provide coverage for an inpatient admission for surgery if the surgery could have been performed on an outpatient basis or an infusion or injection of a specialty drug provided in the outpatient department of a Hospital if the drug could be provided in a Physician's office or the home setting."

20. Excellus specifically covers radiation therapy (**Exhibit A, ECF p. 51**).

21. Absent a finding of medical necessity, Hunter's coverage request facially satisfies the definition of Covered Services.

22. Hunter's treating physician, Dr. Neha Vapiwala of the University of Pennsylvania Hospital prescribed "image-guided hypofractionated proton beam therapy" treatment. This treatment was recommended in light of Hunter's precancerous colon polyps, his history of atypical moles with a family history of melanoma, along with his emotional state.

23. Excellus first denied Hunter's request for coverage by letter dated Feb. 3, 2021 (**Exhibit B)**. This letter, signed by Matthew Kosky, states that there is no research showing that Hunter's type of cancer responds better to the requested type of treatment than the type of treatment that Excellus can approve (intensity modulated radiation therapy).

24. Excellus affirmed this coverage denial by letter dated Feb. 9, 2021 **(Exhibit C)**. This second denial was for the same reason: "[T]here is no current research showing that your type of cancer responds better to the requested type of treatment than the type of treatment [intensity-modulated radiation therapy] we can approve."

7

25. Hunter completed a final appeal (**Exhibit D),** which again was rejected by letter dated April 10, 2021 (**Exhibit E**). The denial was because "charged particle irradiation with proton ion beams is not considered medically necessary for the treatment of prostate cancer [and] there is no current research showing that your type of cancer responds better to the requested type of treatment than the type of treatment [intensity-modulated radiation therapy] we can approve." This denial represented Excellus's final adverse determination.

26. In his appeals, Hunter responded to the contention that intensity-modulated radiation therapy was equivalent with the following:

> It is incontrovertible that exposure to radiation can damage healthy tissue leading to long term detrimental effects including, but not limited to, secondary cancers. The secondary cancers in the radiation treatment of prostate cancer include an increased risk of colon, rectal and bladder cancers. As most colorectal cancers develop from polyps on the inner lining of the colon or rectum and prostate cancer patients are at increased risk of precancerous polyps, the increase risk of rectal cancer following radiation is of particular concern. Other possible long term detrimental effects that diminish quality of life include erectile dysfunction, urinary incontinence, and gastrointestinal toxicities such as chronic diarrhea and fecal incontinence.
>
> It is also widely accepted and supported by clinical studies that PBT is a significantly more effective method than IMRT in applying radiation to a specific target and minimizing the radiation exposure of healthy tissue.
>
> Vargas and colleagues compared PBT with IMRT and reported that "PBT reduced the mean radiation dose to the rectum and bladder by 59% and 35%, respectively".
>
> This reduction in radiation exposure of healthy tissue using PBT has been shown to reduce second cancers. Xiang and colleagues found that "PBT had an overall lower risk of second cancer versus IMRT", as did Sethi and colleagues who's data analysis suggested that PBT "significantly lowers the risk of RT-induced malignancy.

> The use of PBT has also been shown to reduce radiation related toxicities. Bryant and colleagues reported that "PBT provided excellent biochemical control rates,...preserves patient-reported quality of life, and is associated with a low incidence of high-grade urologic toxicity" ; and a study in which Dr. Vapiwala was one of the authors, concluded that hypofractionated PBT is "associated with low rates of toxicity...".
>
> In evaluating my medical condition, my history of precancerous colon polyps, my history of atypical moles with a family history of melanoma, and my emotional status, Dr. Vapiwala concluded that - beyond curing the cancer itself - in order to minimize the risk of secondary cancer and for her patient to regain maximum function, the higher level of precision with PBT is a medical necessity. She states, "In light of Mr. Hunter's young age, otherwise excellent health, and specific concerns of potential late tissue effects and secondary malignancy rates attributable to scatter radiation from photon- based treatment, proton beam therapy would be the non-invasive radiation option of choice for his case." "In addition, Mr. Hunter has a history of colon polyps and prior hernia surgery, which place him at greater risk for adverse implications of low- and moderate-range radiation doses to the bowel." (See Letter of Medical Necessity, Attachment 1).

**(Exhibit  D, ECF p. 3-4)**

27.    The studies cited by Hunter in his appeal are: (1) NIH National Cancer Institute: www.cancer.gov/about-cancer/treatment/types/radiation-therapy/side-effects; (2) Sethi RV, Shih HA, Yeap BY, Mouw KW, Petersen R, Kim DY, Munzenrider JE, Grabowski E, Rodriguez-Galindo C, Yock TI, Tarbell NJ, Marcus KJ, Mukai S, MacDonald SM. Second nonocular tumors among survivors of retinoblastoma treated with contemporary photon and proton radiotherapy. Cancer. 2014;120:126–33; (3)www.cancer.org; (4) University of Buffalo. "Prostate cancer patients are at increased risk of cancerous colon polyps." Science Daily, 19 October 2010. www.sciencedaily.com/releases/2010/10/101019121756.html; (5) Cancer Treatment Reviews, May 14, 2018 https://doi.org/10.1016/j.curve.2018.05.008;

(6) Wisenbaugh ES, Andrews PE, Ferrigni RG, Schild SE, Keole SR, Wong WW, Vora SA. Proton beam therapy for localized prostate cancer 101: basics, controversies, and facts. Rev Urol. 2014;16(2):67-75; (7) Loeffler JS, Durante M. Charged particle therapy--optimization, challenges and future directions. Nat Rev Clin Oncol. 2013 Jul;10(7):411-24. doi: 10.1038/nrclinonc.2013.79. Epub 2013 May 21; (8) Kandula S, Zhu X, Garden AS, Gillin M, Rosenthal DI, Ang KK, Mohan R, Amin MV, Garcia JA, Wu R, Sahoo N, Frank SJ. Spot-scanning beam proton therapy vs intensity-modulated radiation therapy for ipsilateral head and neck malignancies: a treatment planning comparison. Med Dosim. 2013;38:390–4; (9) Vargas C, Fryer A, Mahajan C, et al. Dose-volume comparison of proton therapy and intensity-modulated radiotherapy for prostate cancer. Int J Radiat Oncol Biol Phys. 2008;70:744–751; (10) Xiang, M, Chang, DT, Pollom, EL. Second cancer risk after primary cancer treatment with three-dimensional conformal, intensity-modulated, or proton beam radiation therapy. Cancer. 2020: 126: 3560- 3568. https://doi.org/10.1002/cncr.32938; (11) Bryant C, Smith TL, Henderson RH, Hoppe BS, Mendenhall WM, Nichols RC, Morris CG, Williams CR, Su Z, Li Z, Lee D, Mendenhall NP. Five-Year Biochemical Results, Toxicity, and Patient-Reported Quality of Life After Delivery of Dose-Escalated Image Guided Proton Therapy for Prostate Cancer. Int J Radiat Oncol Biol Phys. 2016 May 1;95(1):422-434. doi: 10.1016/j.ijrobp.2016.02.038. Epub 2016 Feb 16. PMID: 27084658. **(Exhibit D, ECF p. 8)**

28.     Excellus's denial of benefits, despite the clear superiority of proton beam therapy over any alternative therapy for plaintiff, breached its contractual and fiduciary duties.

29.     Excellus's coverage position is even harder to defend when contrasted with its coverage position when Medicare pays for the services. Excellus provides Medicare coverage under the trade names BlueBasic and BluePlus. Both plans cover proton beam therapy for treatment of prostate cancer. Thus, if Hunter were three years older, his proton beam therapy treatment would have been medically necessary.

## COUNT I
## CLAIM FOR PLAN BENEFITS
## UNDER 29 U.S.C. § 1132(A)(1)(B).

30.     Plaintiff incorporates paragraphs 1-29 of this Complaint and restates them.

31.     Plaintiff brings this claim under 29 U.S.C. § 1132(a)(1)(B) for wrongfully denied benefits. Plaintiff is empowered to bring a claim under this provision because he is an ERISA "participant."

32.     Under the terms of the Plan and applicable law, Defendant was required to pay for all medically necessary treatment for Plaintiff.

33.     While covered under the Excellus Plans, Plaintiff wasentitled to benefits under the terms and conditions of the Plan, including coverage for proton beam therapy when Plaintiff suffered prostate cancer for which his treating providers determined proton beam therapy was medically necessary.

34.     Defendant improperly denied proton beam therapy for Plaintiff within the applicable limitations period.

35.     Plaintiff has exhausted all available administrative remedies and appeals.

36. To remedy Defendant's wrongful conduct in denying Plaintiff the proton beam therapy recommended by his providers, Plaintiff seeks an order clarifying that application of that policy to deny his medically necessary proton beam therapy violated the plain terms of the Plan, as regulated by ERISA and implementing regulations incorporated into the Plan.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## UNDER 29 U.S.C. § 1132(A)(3)

37. Plaintiff incorporates paragraphs 1-29 of this Complaint and restates them.

38. Plaintiff brings this claim under 29 U.S.C. § 1132(a)(3). Plaintiff is empowered to bring this claim because he is an ERISA Plan Participant.

39. Defendant acts as an ERISA fiduciary with respect to the administration and claims decisions of the group health benefit plan it issues to employers, within the meaning of 29 U.S.C. § 1109(a) and 1002(21)(A). Defendant exercises discretionary authority or control respecting Plaintiff's plan, and exercises authority or control respecting management or disposition of the plan's assets. Defendant has the authority, and actually exercises the authority, to fund plans or administer Plaintiff's plan, make decisions on claims for benefits and appeals, and to write checks for benefits.

40. As an ERISA fiduciary, Defendant must act with the utmost prudence and loyalty in communicating to Plaintiffand in administering his claims under the plan, and must otherwise comply with the requirements of ERISAin making benefit determinations and processing Plaintiff's claims.

41. As the entity responsible for making Plaintiff's medical benefit determinations and responsible for developing internal practices and policies to facilitate such determinations, Defendant is an ERISA fiduciary.

42. As an ERISA fiduciary, and pursuant to 29 U.S.C. § 1104(a), Defendant is required to discharge its duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose of providing benefits to participants and their beneficiaries" and paying "reasonable expenses of administering the plan." Defendant must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers. Defendant must conform its conduct to a fiduciary duty of loyalty and may not make misrepresentations to its insureds.

43. Defendant violated these duties by adopting, implementing, and applying a policy to deny Plaintiff's coverage request for proton beam therapy based on its finding that such treatment was not superior to other types of covered services, when such a finding was contrary to generally accepted practices and Defendant's own coverage protocol with respect to Medicare plans.

44. In doing so, Defendant did not act "solely in the interests of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits." Defendant did not utilize the "care, skill, prudence, and diligence" of a "prudent man" acting in a similar capacity.

45. Instead, Defendant elevated its own interests and those of its corporate affiliates above the interests of plan participants and beneficiaries.

13

**46.** Plaintiff has been harmed by Defendant's breaches of fiduciary duty because his claims have been excluded improperly when proton beam therapy is actually a Covered Health Care Service within the definition of his plan.

**47.** In acting and failing to act as described above, Defendant has breached its fiduciary duties.

Plaintiff has exhausted all available administrative remedies and appeals.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendant as follows:

A. As to the first claim for relief, an Order awarding Plaintiff the amounts representing the unpaid proton beam therapy benefits; or, in the alternative, entry of an injunction ordering Defendant to retract its categorical denials of proton beam therapy requests for coverage; reprocess and/or re-evaluate his requests for proton beam therapy coverage applying the correct medical necessity calibration, and disgorge all profits Defendant realized due to these improperly denied claims;

B. As to the second claim for relief, an Order requiring the reprocessing and/or re-evaluation of Plaintiff's requests for proton beam therapy coverage applying the correct medical necessity calibration; and an order disgorging all profits realized due to these improperly denied claims;

C.      Awarding Plaintiff the costs of prosecuting this action, including expert witness fees;

D.      Awarding Plaintiff reasonable attorneys' fees and costs as allowable by law;

E.      Awarding pre-judgment and post-judgment interest; and

F.      Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all counts so triable.

Dated: June 17, 2022                      Respectfully submitted,

*/s/Arthur Stock*
Arthur Stock (admitted *pro hac*)
Ryan McMillan (admitted *pro hac*)
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone : (865) 247-0080
astock@milberg.com
rmcmillen@milberg.com

Randi A. Kassan (N.D.N.Y. Bar No. 517821)
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC
100 Garden City Plaza
Garden City, NY  11530
Telephone:  (516) 741-5600
rkassan@milberg.com

Jordan Lewis (admitted *pro hac*)
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Telephone: (954) 616-8995
jordan@jml-lawfirm.com

***Attorneys for Plaintiff***